UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-21622-CIV-MORENO/TORRES

TRADEX GLOBAL MASTER
FUND SPC LTD, THE ABL
SEGREGATED PORTFOLIO 3, *et al.*,

        Plaintiffs,

vs.

PALM BEACH CAPITAL
MANAGEMENT LLC, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court Defendants Palm Beach Capital Management, LLC, Bruce F. Prevost, and David W. Harrold's Motion to Dismiss Plaintiffs' Class Action Complaint. [D.E. 34]. The Court has reviewed the motion, Plaintiffs' response, the reply, related authorities submitted by the parties, and the record in the case. For the foregoing reasons the motion to dismiss should be granted.

### *I.   BACKGROUND*

The following summary of factual allegations is taken from Plaintiffs' complaint and is deemed true for purposes of this motion. The two named Plaintiffs in this case, Tradex Global Master Fund SPC Ltd., the ABL Segregated Portfolio 3 and Tradex Global Master Fund SPC Ltd., the Original Segregated Portfolio 3 ("Plaintiffs" or "Tradex"), are segregated portfolio companies organized under the laws of British

Virgin Islands. Plaintiffs are shareholders in non-party entity called Palm Beach Offshore ("Offshore") which is a hedge fund that was formed in 2004 in the Cayman Islands. Offshore is managed by Defendant Palm Beach Capital Management LLC ("Palm Beach Capital"). Defendants Bruce F. Prevost ("Prevost") and David W. Harrold ("Harrold") were at all pertinent times the controlling owners and executive officers of Palm Beach Capital. Defendants Kaufman Rossin & Co. and Kaufman Rossin & Co. (Cayman) ("Kaufman") served as Offshore's outside auditors at all relevant times. Defendant Admiral Administration Ltd. ("Admiral") provided accounting and administrative services for Offshore.

On June 15, 2009, Plaintiffs filed their Class Action Complaint ("Complaint") against Palm Beach Capital, Prevost, Harrold, Kaufman, and Admiral asserting claims for breach of fiduciary duty, negligence, unjust enrichment, fraud, negligent misrepresentation, and conversion. [D.E. 1]. According to the allegations listed in the Complaint, Plaintiffs' claims all arise as a result of Offshore's investment of its funds into a certain Ponzi scheme. This investment left Offshore insolvent and caused substantial losses to numerous entities, such as Plaintiffs, that invested in the fund.

Namely, Plaintiffs allege that, after receiving the funds from its investors, Offshore made a series of loans to its domestic affiliate, Palm Beach Finance II, Ltd. ("Onshore"). Onshore, in turn, made a series of loans to one Thomas Petters, a certain Minnesota businessman. Petters and his affiliates operated a diverse holding company that, among other things, served as an inventory broker for consumer goods. Petters's company used the loans that it received from Onshore and other investment funds to purchase consumer electronics that it warehoused and resold to retail wholesalers such

as Sam's Club or Costco Wholesale. To minimize the risk associated with lending, Offshore represented to its customers that the loans from Onshore were secured by the related inventory and account receivables. Under Offshore's investment strategy, once the wholesale retailers purchased and took delivery of the electronic goods, Onshore's loans were to be repaid with interest. Onshore was then to repay the loans from Offshore with interest.

In September 2008, however, the "house of cards" collapsed when the federal authorities uncovered that Petters and his affiliates had been operating a massive fraud. Investigators found that Petters's company had been generating phony purchase orders and invoices in order to make it appear as though it were purchasing and reselling consumer electronics when, in fact, it was not. The federal investigators also discovered that in many instances the loan proceeds were sent directly to the purported merchandise suppliers, which gave the appearance of a legitimate operation. The merchandise suppliers, however, simply forwarded the funds to Petters's company without actually purchasing any merchandise.

The pending lawsuit seeks to recover investment losses, punitive damages, costs, disbursements, and attorneys' fees. Plaintiffs seek to represent a class comprised of all persons and entities that invested in, purchased, or retained shares in Offshore from its inception to the present and who incurred losses.

Pursuant to Fed. R. Civ. P. 9(b), 12(b)(3), and 12(b)(6) Defendants Palm Beach Capital, Prevost, and Harrold now move jointly to dismiss the entire Complaint arguing that: 1) Cayman Islands has exclusive jurisdiction over this action pursuant to the forum selection clause included in the Subscription Agreement that Plaintiffs

signed when they invested in the Offshore Fund; 2) Plaintiffs lack standing to pursue their claims; and 3) the fraud and conversion claims should be dismissed because they are not pled with sufficient particularity demonstrating that Defendants had actual knowledge of the Petters fraud.

Plaintiffs oppose transfer of this action to the Cayman Islands contending that the forum selection clause is unenforceable because: 1) Offshore never signed the subscription agreement; 2) the forum selection clause was procured by fraud; and 3) enforcement of the clause would invite inconsistent rulings and judgments.

## II.   ANALYSIS

### A.   *Standard of Review*

Motions to dismiss based on forum selection clauses are cognizable as motions to dismiss for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir. 1998). When a valid forum selection clause exists, the party seeking to defeat the agreed upon venue "bears the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

Forum selection clauses are presumptively valid, and the burden of proving their unreasonableness is heavy one. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991). A forum selection clause may be unreasonable where: 1) incorporation of the clause was the product of fraud or overreaching; 2) a party will "for all practical purposes be deprived of his day in court" because of inconvenience or unfairness of the

selected forum; 3) the unfairness of the chosen law will deprive the plaintiff of a remedy; or 4) enforcement of the clause would contravene a strong public policy of the forum state. *Id*. The Eleventh Circuit has reiterated these principles. *P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807-08 (11th Cir. 2003) (rejecting argument that financial difficulty of party in litigating in selected forum or congestion of docket in selected forum are sufficient grounds for refusal to enforce a clause).

The validity of a forum selection clause is determined under the usual rules governing the enforcement of contracts in general. *Id*. (citing *In re Ricoh Corp.*, 870 F.2d at 573-74). To bind a non-party to a forum selection clause, that person "must be closely related to the dispute such that it becomes foreseeable that [she] will be bound." *Lipcon*, 148 F.3d at 1299; *see also Manett-Farrow, Inc. v. Guci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) ("[A] range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.").

Finally, in considering such a motion, the court accepts the facts in the plaintiff's complaint as true. *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). A court may also "consider matters outside the pleadings if presented in proper form by the parties." *MGC Commc'ns, Inc. v. BellSouth Telecomms., Inc.*, 146 F. Supp. 2d 1344, 1349 (S.D. Fla. 2001) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1364 (2d ed. 1990)). Where conflicts exist between allegations in the complaint and evidence outside the pleadings, the court "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Wai*, 315 F. Supp. 2d at 1268.

### B. *This Forum Selection Clause is Enforceable*

The following forum selection clause was part of the Subscription Agreement that each investor signed before purchasing shares in Offshore. The clause states:

> The parties agree that any action or proceeding arising directly, indirectly or otherwise, in connection with, out of, related to, or from, this Subscription Agreement, any breach hereof, or any transaction covered hereby, shall be resolved, whether by arbitration or otherwise, exclusively within the Cayman Islands. Accordingly, the parties consent and submit to the exclusive jurisdiction of the courts located within the Cayman Islands. The parties further agree that any such action or proceeding brought by either such party to enforce any right, assert any claim, or obtain any relief whatsoever in connection with this Subscription Agreement shall be commenced by such party exclusively in the Cayman Islands.

*See* Subscription Agreement ¶ 15 [D.E. 35-2]. The plain language of the clause clearly requires all disputes arising from Plaintiffs' investments with Offshore to be filed in the Cayman Islands. Thus, Plaintiffs essentially do not dispute that the asserted claims fall within the scope of this clause as they all relate to the original subscription agreements between Plaintiffs and Offshore. Instead, Plaintiffs merely argue that we should not enforce the clause because: 1) Offshore never signed the subscription agreement; 2) the clause was procured by fraud; and 3) enforcement of the clause would invite inconsistent rulings and judgments.[1]

---

[1] In addition, Plaintiffs state in their Complaint that the forum selection clause "may only be enforced by, or applied to, the 'parties' to the Subscription Agreement, and none of the Defendants are parties to the Subscription Agreement." *See* Complaint ¶ 14. Although Plaintiffs do not raise this argument in their Response in Opposition, this argument would fail. As Defendants point out, courts in this Circuit have held that a "range of transaction participants, whether parties or non-parties, are subject to forum selection clauses if these participants or their conduct are so closely related to the contractual relationship or transactions therein that their being bound is foreseeable." *Thunder Marine, Inc. v. Brunswick Corp.*, No. 8:06-CV-384-T17, 2006 WL 1877093, at *5 (M.D. Fla. July 6, 2006)

### *1. Lack of Offshore's Signature and Validity of the Clause*

Under Florida law,[2] it is generally sufficient that the party against whom the contract is sought to be enforced signs the contract. *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1305 n.12 (11th Cir. 2007) (applying Florida law) (quoting *Dodge of Winter Park, Inc. v. Morley*, 756 So. 2d 1085, 1085-86 (Fla. 2000)). Furthermore, a party may also indicate its acceptance to a contract through performance. *See Consolidated Resources Healthcare Fund I, Ltd. v. Fenelus*, 853 So. 2d 500, 503 (Fla. 4th DCA 2003) ("A contract is binding, despite the fact that one party did not sign the contract, where both parties have performed under the contract"). "The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, for example, by the acts or conduct of the parties." *Gateway Cable T. V., Inc. v. Vikoa Const. Corp.*, 253 So. 2d 461, 463 (Fla. 1st DCA 1971).

Here, it is undisputed that Plaintiffs, who all signed the Subscription Agreements, are now resisting the enforcement of the forum selection clause. The cases cited by Plaintiffs are clearly inapplicable because in all of them, and unlike the present case, the contract was not signed by the party who resisted the enforcement of the contract. *See, e.g., Hampton Island Preservation, LLC v. Club & Community Corp.*, 998 So. 2d 665, 668 (Fla. 4th DCA 2009) (refusing to honor an Agreement for

---

[2] It appears that Cayman Islands may have a strong interest in applying its contract law when we interpret the Subscription Agreement in question. However, neither party argues that we should apply Cayman law when interpreting this contract. Furthermore, parties have proffered no evidence that Florida contract law is in conflict with Cayman law and even if such a conflict exists it is not merely a "false conflict." *See, e.g., Estate of Miller v. Thrifty Rent-A-Car System, Inc.*, 637 F. Supp. 2d 1029, 1036 (M.D. Fla. 2009). Therefore we will proceed with an analysis under Florida law.

Professional Services that was unsigned by a party for the purposes of establishing personal jurisdiction over that party); *ZPC 2000, Inc. v. SCA Group, Inc.*, 86 F. Supp. 2d 274, 277 (S.D.N.Y. 2000) (declining to enforce a forum selection clause against a party that never signed the agreement); *Ward v. Kerzner Int'l. Hotels Ltd.*, No. 03-23087-CIV-JORDAN, 2005 WL 2456191 (S.D. Fla. 2005) (refusing to enforce a forum selection clause against a plaintiff who never signed the agreement).

Lastly, as Defendants correctly point out, Plaintiffs' position on the forum selection clause is at odds with the entire thrust of their Complaint. Namely, the Complaint is grounded on Plaintiffs' status as investors in Offshore who are entitled to the benefit of the representations contained in Offshore's offering memorandum. The offering memorandum, however, makes clear that an investment in Offshore may only be made through the submission and acceptance of a subscription agreement. *See* Offering Memorandum at 27 [D.E. 35-2].

Accordingly, we conclude that the absence of Defendants' signature on the subscription agreements does not render the forum selection clause unenforceable.

### 2. *Fraud or Overreaching*

Next, Plaintiffs contend that the forum selection clause is invalid because it was acquired through fraudulent means. Plaintiffs point out that when they are alleged to have signed the subscription agreements, the Ponzi scheme into which Defendants funneled Plaintiffs' money was already in full swing. Therefore, Plaintiffs reason that had they known that Defendants intended to invest their money into one of the largest Ponzi schemes in history, they naturally would have never signed the subscription

agreements. Plaintiffs' argument has no merit.

*Bremen's* exception for enforcement of forum selection clauses for fraud or overreaching "does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud . . . the clause in the contract was the product of fraud or coercion." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974). "Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion." *Id.* Therefore, fraud and overreaching must be specific to a forum selection clause in order to invalidate it.

Plaintiffs have presented no evidence that the forum selection clause is invalid due to fraud or overreaching. Contrary to Plaintiffs' position, a mere allegation of fraudulent activities on the part of Defendants pertaining to subsequent misappropriation of Plaintiffs' funds is not sufficient to invalidate the forum selection clause. *See, e.g., Mercury West A.G., Inc. v. R.J. Reynolds Tobacco* Co., No. 03 Civ. 5262(JFK), 2004 WL 421793 (S.D.N.Y. Mar. 5, 2004) ("in order to invalidate the forum selection clause, the clause itself would have to have been the product of fraud"); *Giordano v. Witzer*, 558 F. Supp. 1261, 1264 (E.D. Pa. 1983) (charge of fraud in the inducement of the agreement of sale is insufficient to invalidate the forum selection clause); *see also Lipcon*, 148 F.3d at 1296 ("By requiring the plaintiff specifically to allege that the choice clause itself was included in the contract due to fraud in order to succeed in a claim that the choice clause is unenforceable, courts may ensure that more general claims of fraud will be litigated *in the chosen forum*, in accordance with

the contractual expectations of the parties. We conclude that the allegations in the Lipcons' complaint are insufficient to satisfy *Scherk*'s rigorous standard for pleading fraud.") (emphasis in original).

We find that Plaintiffs' challenge to the forum selection clause is not separate and distinct from its challenge to the entire agreement. Therefore, because we can only set aside a forum selection clause if a party was fraudulently induced to include the clause itself in the agreement, we conclude that the forum selection clause in the Subscriber Agreement was not a product of fraud or overreaching.

### 3.  *Public Policy and Fundamental Fairness*

Plaintiffs the argue that the enforcement of the forum selection clause would invite inconsistent rulings and judgments between Florida and Cayman Islands because Defendant Kaufman is not objecting to venue in this district. Therefore, Plaintiffs contend that litigation of this dispute could easily become unmanageable if prosecuted against different defendants in different forums, where overlapping questions of fact and law may be decided very differently. Although Plaintiffs raise an important issue of danger associated with piecemeal litigation, the circumstances of this case do rise to a level that would warrant rejection of an agreed upon forum.

Courts have declined to enforce forum selection clauses where enforcement would result in multiple lawsuits in different forums, but ordinarily only in cases where a narrowly-drawn forum selection clause only applies to some of the plaintiff's claims against a defendant but not others. *See, e.g., BP Products N. Am. Inc. v. Super Stop 79, Inc.*, 464 F. Supp. 2d 1253, 1257 (S.D. Fla. 2006) (declining to enforce forum

selection clause that applied to some, but not all, counts against defendants).  Such concern is not present here because the forum selection clause applies to all of the claims asserted against Palm Beach Capital, Harrold, and Prevost.

Plaintiffs also argue that the forum selection clause should not be enforced because Florida has a strong public policy interest in combating fraudulent behavior. Plaintiffs have failed to allege, however, that the Cayman Islands does not share this pubic policy.  Furthermore, in support of their public policy argument, Plaintiffs point to Defendants' substantial connections to the United States and Florida. Plaintiffs also emphasize the fact, that despite conduct substantial business within Florida's borders, Defendants now seek to have the courts of the Cayman Islands decide whether they engaged in fraudulent behavior.  Although Plaintiffs raise many important matters that would be important to consider in a traditional *forum non conveniens* analysis, these factors have little bearing when a party moves to dismiss based on a forum selection clause.

More importantly, Plaintiffs argument can easily be flipped against them. According to Offshore's Offering Circular, because Offshore was organized under the laws of the Cayman Islands, it presented a highly advantageous tax opportunity for Plaintiffs.  So long as Offshore did not engage in a trade or business in the United States, it was not subject to U.S. corporate income tax.  Moreover, foreign investors who were not themselves engaged in a trade or business in the United States were not required to pay U.S. income taxes on any distributions that they received from Offshore or on the sale of their shares in Offshore.  Consequently, many investors in

Offshore, including quite possibly some of the Plaintiffs, were able to avoid paying any taxes in the United States. Thus, it can be argued that Plaintiffs who knowingly invested in a Cayman fund in order to avoid the reach of U.S. taxes now turn to an American court to seek remedy for the fund's alleged fraudulent behavior. Public policy does not favor such an outcome.

Lastly, Plaintiffs contend that the forum selection clause is unenforceable because they would be deprived of their day in court in the Cayman Islands. The only example offered by Plaintiffs, however, is that "the odds are against [this lawsuit] proceeding as a class action" in Cayman Islands. Plaintiffs' argument is not convincing. First, Plaintiffs fail to cite any legal authority to support their speculative assertion. Second, there is no guarantee that this lawsuit will be certified as a class action if it remains here. Third, even if class-wide relief is not available in the Cayman Islands, Plaintiffs can pursue their claims individually. Other than mere allegations, Plaintiffs fail to show that pursuing individual relief is an illusory remedy because each individual's loss is too small to warrant filing an individual suit. *See In re Lloyd's American Trust Fund Litig.*, 954 F. Supp. 656, 673 (S.D.N.Y. 1997) (enforcing a forum selection clause despite the unavailability of a class action in England).

Accordingly, based on parties' contractual agreement, we find that the courts of Cayman Islands have the exclusive jurisdiction over the claims asserted between Plaintiffs and the three moving Defendants. Because we recommend dismissal based on Rule 12(b)(3) we do not reach the merits of Defendants' remaining arguments for dismissal.

### III.  CONCLUSION AND RECOMMENDATION

For the foregoing reasons, it is hereby **RECOMMENDED** that Defendants Palm Beach Capital Management, LLC, Bruce F. Prevost, and David W. Harrold's Motion to Dismiss Plaintiffs' Class Action Complaint [D.E. 34] should be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) business days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 4th day of December, 2009.

   */s/ Edwin G. Torres*
   EDWIN G. TORRES
   United States Magistrate Judge